[Pollak v. Caldwell.]

# Pollak v. Caldwell.

*Statutory Action in nature of Ejectment.*

94 149
106 303
106 462

94 149
132 617

1. *Abandonment of homestead.*—When a homestead exemption has been claimed and allowed against an execution in the hands of the sheriff, it is not lost by afterwards renting out some of the rooms of the house, while the owner retains and continues to reside in the others; nor by going off on a temporary visit, however long, with the expectation and intention of returning and occupying the house as a home; but, if the premises are rented out in the meantime, the homestead is forfeited (Code, § 2539), unless the claim of exemption is duly filed for record in the office of the judge of probate.

APPEAL from the Circuit Court of Macon.

Tried before the Hon. JAMES R. DOWDELL.

This action was brought by Ignatius Pollak against J. W. Echols, tenant in possession, to recover a house and lot in Tuskegee, particularly described in the complaint; and was commenced on the 22d February, 1890. W. P. Caldwell, the landlord of Echols, intervened and defended the suit. The plaintiff claimed as purchaser at sheriff's sale under execution against Mrs. A. M. Kelly. The material facts on which his purchase was based, are stated in the opinion of the court, and also in the report of the case on the former appeal—91 Ala. 353–59. The defendant, who was a nephew of Mrs. Kelly, claimed under a conveyance executed to him by her, or which purported to have been so executed, on a recited valuable consideration; and the exclusion of this deed as evidence, on the first trial, was one of the grounds of reversal on the former appeal. It is unnecessary to state any of the facts in relation to this deed, as it was not offered in evidence on the second trial, the defendant relying only on the failure of the plaintiff to establish his own title; and this depended on the question, whether Mrs. Kelly had abandoned her homestead exemption in the premises while an execution on the plaintiff's judgment was in the hands of the sheriff. The bill of exceptions purports to set out "substantially all the evidence," and it is also stated in the opinion. The plaintiff asked the court to instruct the jury, that they must find for him, if they believed the evidence; and the refusal of this charge, to which the plaintiff excepted, is now assigned as error, with other rulings which require no notice.

[Pollak v. Caldwell.]

W. F. FOSTER, for appellant, arguing and insisting on each of the assignments of error, cited the following authorities as to the abandonment of the homestead :—Code, § 2539 ; *Scaife v. Argall*, 74 Ala. 473; *Murphy v. Hunt, Miller & Co.*, 75 Ala. 438; *Stow v. Lillie*, 63 Ala. 259; *Goodloe v. Dean*, 81 Ala. 479; *Beckert v. Whitlock*, 83 Ala. 123.

WATTS & SON, *contra*, cited and relied on *Caldwell v. Pollak*, 91 Ala. 353.

STONE, C. J.—Pollak, the appellant, claims under a purchase at sheriff's sale, and sheriff's deed made pursuant thereto. The judgment and execution under which he purchased were against Mrs. A. M. Kelly. The judgment was rendered in 1881, and soon thereafter execution was levied on the house and lot, which are the subject of the present suit. Mrs. Kelly interposed a sworn, written claim of homestead exemption; the claim was not contested, and no sale was made under the levy. No other execution was issued on the judgment for some years. All the testimony tends to show that the house and lot were worth not exceeding one thousand dollars, and that she occupied the property as a residence and homestead, at least, until she left the premises in 1888.

This is the second appeal in this case.—*Caldwell v. Pollak*, 91 Ala. 353. On the first trial, it was shown that, commencing a few years after the first levy and claim of exemption in 1881, executions had been regularly issued and kept in the hands of the sheriff of the county, without a lapse of a term, until the sale was made in 1889. Execution was issued in March, 1888, and returned by the sheriff, without action, in September following. Another execution was issued in September, 1888, on which the sheriff, on February 2d, 1889, indorsed a levy on the property sued for in this action, and returned the execution with his indorsement thereon, "that he had not sold the same for want of time to make publication." On April 2, 1889, the last execution was issued, under which the sheriff sold the property in May, 1889, and Pollak became the purchaser, receiving the sheriff's deed. The testimony shows, without conflict, that Mrs. Kelly died in January, 1889, before the sheriff made any levy, after 1881. So, whether the levy made in February, 1889, and sale made in May afterwards, vested any title in the purchaser, depends on the inquiry, had the execution acquired a lien on the house and lot during the life-time of Mrs. Kelly. Unless it had acquired such lien before her death in January preceding, the

sale was void, and Pollak was without title.—Code of 1886, § 2897; *Hendon v. White*, 52 Ala. 597; *Sims v. Eslava*, 74 Ala. 594.

On the first trial, it was testified that Mrs. Kelly had a married daughter living in Columbus, Georgia, and that in October, or November, 1888, she left the premises, and went to her daughter's home. She never returned, but died at her daughter's in January, 1889. The facts affecting her previous occupancy of the house, and her leaving it in 1888, were testified to as follows: "Mrs. Amanda M. Kelly, after Mr. Kelly's death, for many years resided on, occupied and controlled said house and lot, before her death, which occurred in January, 1889; that Mrs. Kelly, while so in possession of said house, at different times rented a portion of said house to other persons; that she rented a portion of said house to Mr. ———, in the year 1888." Another witness testified, "that Mrs. Kelly occupied and controlled said house and lot for some four, five, or six years past. . . It was also proved by plaintiff that Mrs. Kelly left Tuskegee, and went to Georgia, in October, or November, 1888." The claim of exemption filed in 1881, when the first levy was made, consisted of Mrs. Kelly's affidavit of claim, which was lodged with the sheriff.

We have now stated everything which the record on the former appeal showed bearing on the question of Mrs. Kelly's abandonment of her residence. The record affirmed that it contained all the evidence. It can not be gainsaid that, according to the facts then shown, the dwelling had for years been Mrs Kelly's homestead. Renting out some of her rooms, she continuing to reside in the house, was not a change of residence on her part. So, going off on a temporary visit, with the expectation of returning and occupying the house as her home, would not be a forfeiture of her homestead. *Boyle v. Shulman*, 59 Ala. 566; *Lehman v. Bryan*, 67 Ala. 558. The trial court had charged the jury, as matter of law, that if they believed all the evidence they must find for the plaintiff. This we held was error. We said it should have been left to the jury to determine with what intention Mrs. Kelly left home, when she went to Georgia. On the facts then presented, we find nothing to cause us to change our ruling. We still hold, that merely going off on a visit, even though it be a long visit, if there be nothing else in the transaction, is no forfeiture of the homestead.

On the second trial in this case, the testimony was materially different. Mr. Motley testified on the second trial, "that Mrs. Kelly had rented the house and lot and a part of the furniture to Rev. Mr. Jones, at the beginning of 1888, reserv-

ing a room in the house, for her board; and that she had remained in the house until about the first day of May, 1888, when she left the same and went to Georgia where her daughter lived, on a visit to her." If the testimony had stopped at this point, we would hold that our rulings on the former appeal would be applicable to this. It would still remain a question for the jury to inquire whether, in going to Georgia, Mrs. Kelly's intention was to cease to be a resident of her former dwelling, or simply to visit her daughter. Speaking, however, of the time Mrs. Kelly left home on that occasion, this witness stated "that she [Mrs. Kelly] then rented the house and lot and a part of the furniture to Mr. Jones for ten dollars per month." This testimony is no where disputed or qualified by any other testimony, and the bill of exceptions states it contains all the evidence. This testimony, unexplained, if true, brings the case directly within section 2539 of the Code of 1886, and was a forfeiture of the homestead exemption, even though Mrs. Kelly intended to return and re-occupy the residence after the termination of the lease. It was a break, or chasm in her continued occupancy, and, unlike a mere visit paid, was a surrender of the exemption, unless a declaration of claim of homestead exemption had been filed in the office of the judge of probate.—Code, §§ 2539, 2515, 2516; *Stow v. Lillie*, 63 Ala. 259; *Scaife v. Argall*, 74 Ala. 473; *Murphy v. Hunt*, 75 Ala. 438. It is nowhere shown that Mrs. Kelly had made and filed such declaration of claim in the probate office.

On the testimony found in this record, the general charge asked by the plaintiff ought to have been given. There is nothing in the other exceptions.

Reversed and remanded.