# Fuller *v.* American Supply Co.

## *Contest of Homestead Exemptions.*

(Decided February 12, 1914. 64 South. 549.)

1. *Statutes; Provision; Change of Language.*—Alteration of phraseology, or the omission or addition of words in the codification of a statute will not be regarded as changing the legislative intent, unless the language employed is not susceptible of any other reasonable construction.

2. *Homestead; Exemptions; Occupancy.*—Occupancy is essential to the privilege of homestead exemptions extended by the Constitution and laws of the state to town lots and country acres owned and occupied by residents.

3. *Same; Temporary Absence; Declaration; Jury Question.*—The filing of a declaration provided for by section 4192, Code 1907, is not an indispensable condition on which the owner of a homestead may protect his exemption during temporary absences; hence, where such owner without filing such declaration, and without leasing his homestead, removed his family to another dwelling where he remained from the spring of 1911 to September, 1912, there was no abandonment as a matter of law.

4. *Same; Contentions; Jury Question.*—The facts considered, and it is held that under them it was a question for the jury whether the owner intended to abandon the homestead.

[Fuller v. American Supply Co.]

APPEAL from Monroe Circuit Court.

Heard before Hon. JOHN T. LACKLAND.

The American Supply Company had judgment against J. H. Fuller and had execution thereon levied upon a house and lot as the property of such Fuller. Fuller interposed claim of homestead exemption which was contested, and from a judgment sustaining the contest Fuller appeals. Reversed and remanded.

BARNETT & BUGG, for appellant. Under the following authorities it must be held that the court was in error in directing a verdict in favor of the contestant. *Dicus v. Hall,* 83 Ala. 159; *Hodges v. Winston,* 95 Ala. 514; *Winston v. Hodges,* 102 Ala. 170; *Inzor v. Hurt,* 76 Ala. 595; *Bates v. Hart,* 124 Ala. 447.

HYBART & HARE, for appellee. The following cases demonstrate the correctness of the action of the court under the facts in this case in declaring as a matter of law that the homestead exemptions was lost, and that the property was subject to execution sale.—*Boyle v. Shulman,* 59 Ala. 566; *McConnaughy v. Baxter,* 55 Ala. 379; *Blum v. Carter,* 63 Ala. 235. He failed to file his claim under the provisions of section 4192, Code 1907, and the term of his absence cannot be said to have been temporary.—*Land v. Boykin,* 122 Ala. 627; *Porter v. Harrison,* 124 Ala. 296; *Gist v. Lucas,* 122 Ala. 557; *Blackmon v. Hardware Co.,* 106 Ala. 458.

SAYRE, J.—There is but one question of any consequence in this case, and that is whether under the evidence admitted by the court and that offered by the appellant, but rejected in the court below, the court could properly say as matter of law that appellant was not entitled to a homestead exemption as against appellee's execution.

Appellant, defendant in execution, had a dwelling upon the land in question, a parcel slightly in excess of one acre in area, where he lived with his family prior to the year 1911. In the spring of 1911 he removed his family to a dwelling house—some 150 yards away— owned by a corporation of which he was an officer and stockholder, and by which he was employed at its sawmill. At no time prior to September 12, 1912, the date upon which appellee's execution was levied, did he file a declaration of claim of homestead exemption under section 4192 of the Code. In the meantime one Parker occupied the property in suit for about 30 days, but on what terms does not appear. He may have been subject to summary ouster at any time. According to the testimony offered by appellee, the dwelling house was allowed to fall into a state of delapidation and presented an appearance of decay. On the other hand, appellant proved that he had cultivated "the garden and land" around the house, that he frequently visited the property, and had kept some part of his household goods stored there, and offered to prove that his servants had occupied the servant house on the lot in suit, and that the house to which he had removed was more convenient to his employment at the mill.

Appellant seeks to bring his case within the influence of the decision in *Dicus v. Hall*, 83 Ala. 159, 3 South. 239, the principle of which has been repeatedly recognized by this court.—*Beard v. Johnson*, 87 Ala. 729, 6 South. 383; *Hodges v. Winston*, 95 Ala. 514, 11 South. 200, 36 Am. St. Rep. 241; *Jaffrey v. McGough*, 88 Ala. 648, 7 South. 333; *Thacker v. Morris*, 166 Ala. 395, 52 South. 73. The principle of *Dicus v. Hall* is that detached parcels of land, collectively not in excess of the limit, may be claimed as exempt where they have been owned and occupied by the same person as one and the

same homestead, and as a direct source of family support. But we are of opinion that the doctrine of that case can have no application to the facts of this case for the reason that the property in suit appears to have been a lot in the town or village of Nadawah, whereas the doctrine of that case is to bring an outlying tract of agricultural land, cultivated for the production of supplies for the "comfort, wants, and requirements" of the family, within the exemption of rural lands provided by the constitutional and statute law of the state. The rule has no application to noncontiguous urban lots.—*Tyler v. Jewett,* 82 Ala. 93, 2 South. 905; *Seabury v. Hemley,* 174 Ala. 116, 56 South. 530.

Appellee, on the other hand, contends that this case must be determined in his favor on section 4192 of the Code, and cites *Land v. Boykin,* 122 Ala. 627, 25 South. 172, as conclusive authority for his interpretation of the section and the rights of the parties. We think there is a misapprehension of the purpose and effect of the statute and the meaning of the decisions in which it has had consideration.

Of course the statute has no operation in a case where the owner quits his homestead permanently, that is, without a present and continuing intention to return, because in such case the homestead is forfeited without regard to declaration filed; in such case the declaration of claim would be a fraud upon the statute, and ineffectual.—*Beckert v. Whitlock,* 83 Ala. 131, 3 South. 545. In this state prior to 1877 a leasing for a term was considered an abandonment of the homestead for the reason that by creating a leasehold term in another the owner deprived himself of the power to return during the term.—*Boyle v. Shulman,* 59 Ala. 566; *Kaster v. Mc-Williams,* 41 Ala. 302; *Stow v. Lillie,* 63 Ala. 257. But in 1877 the Legislature, by an act the title of which

foretold a purpose "to protect exempted property" (Acts 1876-77, p. 43), provided "that when a person has a right of homestead, * * * a temporary quitting or leasing the same for a period of not more than twelve months at any one time shall not be deemed to be an abandonment of it as his homestead," if he shall file a declaration, etc. Section 26 of the act. This section of the act was literally transcribed into the Code of 1876 as section 2843. In all later Codes, beginning with 1886 (section 2539) it has been given this form: "When a declaration of claim to a homestead exemption has been filed in the office of the judge of probate, leaving the homestead temporarily, or a leasing of the same shall not operate an abandonment thereof, or render it subject to levy and sale; but the right thereto shall remain the same as if the actual occupancy thereof had continued."

In arriving at the meaning and effect of this statute in its original and revised forms, the purpose declared in the title, the body of related law, and the settled policy of the state, must be consulted. One unmistakable effect of the statute, recognized all along, has been to enlarge the rights and privileges of homestead owners, in that they are permitted to let their homesteads to rent on condition that they file the declaration. But temporary quittings, where there is no letting to rent, are upon a different footing. The privilege of homestead exemption is, by the Constitution and laws of the state, extended to town lots and country acres "owned and occupied" by residents of the state. Occupancy is essential. Before the statute in question it was never supposed that a homestead exemption could be lost by temporary withdrawals, as, for example, where the owner leaves for the purpose of educating his children, to recuperate his health, to travel in foreign parts, to at-

[Fuller v. American Supply Co.]

tend a camp meeting, to engage temporarily in trade, to seek work, to raise a crop, or to hold official position, intending all the while to return. Occasions for some such absences come to nearly every one, and they were not regarded as constituting an abandonment. In such cases the owner was regarded in law as in the actual occupancy of his homestead. Any other interpretation of such absences would make of the homestead, not a refuge, but a prison. An owner, absent on such occasion, has all along been commonly regarded as an actual occupant, and he must be still so regarded, unless the statute has clearly provided to the contrary. A homestead, once acquired, is presumed to continue until a change, facto et animo, is shown.—*Murphy v. Hunt,* 75 Ala. 438; *Caldwell v. Pollak,* 91 Ala. 357, 8 South. 546; *Huffman v. Smyth,* 47 Or. 573, 84 Pac. 80, 114 Am. St. Rep. 938, 8 Ann. Cas. 678. These principles have been made familiar by the previous decisions of this court, but they have been referred to because necessary to give point to our conclusion.

We have examined many of our cases, and in all of them in which it has been held that the owner forfeited ipso facto, his exemption by an absence intended to be temporary, he had let his homestead for a term. This was so even in *Land v. Boykin, supra,* though in that case there was a reservation of a part of the premises, namely, the dwelling, orchard, and garden. In that case the court seems to have attached no importance to the reservation; but a different view of the effect of a like fact, with like surroundings, was taken by the court in the later case of *Bland v. Putman,* 132 Ala. 613, 32 South. 616, where it was held sufficient to take the question of intention and the case to the jury.

It must be conceded, also, that in *Porter v. Harrison,* 124 Ala. 296, 27 South. 302, the homestead claimant was

decreed to have lost his right, although it did not appear that he had let his place to rent during his absence; but it seems clear that the court there proceeded on the theory—indeed, the language of the court is—that the claimant had established his residence elsewhere, had even registered as a voter and voted in another precinct, and for that reason his effort to re-establish his lost homestead in the place he had left by filing a claim of exemption was of no avail. The controlling principle of the case was that no man can have two places of legal residence, two domiciles, at one and the same time.

*Fuller v. Whitlock,* 99 Ala. 411, 13 South. 80, was a case in which the owner left his homestead to engage in the service of the United States. He had duly filed his declaration of exemption with the judge of probate, and had been absent for less than 12 months, having the intention of returning, as the court found on the testimony. In the meantime he had rented out a part of his dwelling to a tenant by the month, but kept his furniture and effects in another part of the house. The rights of the parties accrued while the Code of 1876 was in force. The right of the homestead claimant was upheld; but Judge Head appears to have been of the opinion that it would have been forfeited had he not intended to return within 12 months. However, the expression of that opinion was not necessary to a decision of that case; it was unsupported by authority, and, so far as we are informed, has never been followed, though the case has been cited to other points. Judge Stone, to the contrary, said in *Scaife v. Argall,* 74 Ala. 473, that the act made an exception as to actual occupancy, meaning that the act relieved the exemptioner of the necessity of an actual occupancy upon compliance with its terms and conditions. But as we have seen, the owner had always been considered as in the actual occupan-

[Fuller v. American Supply Co.]

cy of his homestead when he left it, animo revertendi, and without putting it out of his power at any time to return and occupy, and Judge Stone, leaving no room for doubt as to his construction of the "leasing clause" of the act, seems to have construed the act as a whole about in this fashion: A temporary quitting shall not constitute an abandonment; nor shall a leasing for a period of not more than 12 months at any one time, provided in the last case a declaration is filed, etc. And in *Pollak v. Caldwell*, 94 Ala. 149, 10 South. 266, he later said: "We still hold that merely going off on a visit, even though it be a long visit, if there be nothing else in the transaction, is no forfeiture of the homestead." The decisions generally show that the right of the homestead claimant to absent himself, provided only he intends continuously to return, has not been limited to one year, or two.—Thomp. Homesteads, § 272.

The statute in its present form in the Code has still further enlarged the privileges of the owner in respect to letting his homestead to rent by removing the limitation of 12 months. This change in the law is unmistakable, as we have said, and must be given effect. It is in accordance with the expressed purpose of the title of the act. The arrangement of the grammatical members of the sentence which constitutes the section has also been changed, and there have been slight changes in verbiage. But "no rule of statutory construction rests upon better reasoning than that, in the revision of statutes, alteration of phraseology, the omission or addition of words will not necessarily change the operation or construction of former statutes. The language of the statute as varied, or the legislative intent to change the former statute, must be clear before it can be pronounced that there is a change of such statute in construction and operation."—*Landford v. Dunklin,*

71 Ala. 594; *Jackson County v. Derrick,* 117 Ala. 361, 23 South. 193. The rule in construing revisory statutes is that "the language of the statute as revised, or the legislative intent to change the former statute, must be clear before it can be pronounced that there is a change of·such statute in construction and operation," and, also, 'before the courts can pronounce that the law is changed, the legislative intent to change it must be evident. Language must be employed which is not susceptible of any other just construction."—*Lindsay v. U. S. Savings & Loan Co.,* 127 Ala. 366, 28 South. 717, 51 L. R. A. 393; *Southern Ry. Co. v. Smith,* 163 Ala. 174, 50 South. 390. The re-arrangement in this case was made, no doubt, in an effort of the commissioner to condense the language and improve the rhetoric of the section. It is of no material consequence.—36 Cyc. 1166.

Statutes on the subject of homestead and other exemptions have always received a liberal construction in furtherance of the humane constitutional and legis-. lative purpose. Considering this section of the Code in view of the policy elsewhere uniformly followed by the Legislature and the courts, and in connection with the antecedent law, we are satisfied that it was not the intention of the statute, in the form to which it has been reduced by the revisers of the Code, to make the filing of a declaration with the probate judge an indispensable condition upon which the owner of a homestead may have the protection of his exemption during temporary absences in which he intends to return, and continuously keeps it within his power to do so. To so construe the statute would be to·add to the burdens of "actual occupants," while conferring the benefit of the exemption upon lessors whom the statute brought under the protection of the Constitution with some degree of

doubtful propriety, for the right of homestead is "conferred to protect the roof that shelters, and cannot be converted into a shield of investments in lands, from which rents and profits are to be derived."—*Boyle v. Shulman, supra.* In a number of states it was held that a leasing did not work a forfeiture.—Thomp. Homesteads, § 273. In this state, however, judicial decision had made it necessary that the rule of those states should be adopted by statute, if at all; and, of course, conditions might be attached. But in the case of temporary absence without more, the statute did nothing for the benefit of the homestead owner, unless, as was suggested in *Beckert v. Whitlock, supra,* the filing of a declaration furnished prima facie evidence of the owner's intention to return and occupy. On the other hand, the letter of the statute does not deny to the owner, quitting temporarily, any privilege he had previously enjoyed. There are in the Code scores of instances in which the Legislature has expressed a right which already existed. Aside from the suggestion of *Beckert v. Whitlock,* this act merely states a case in which the owner who quits temporarily, without leasing, shall not lose his exemption. As to him, the letter of the statute declares and reaffirms a right he already had. To his essential rights and privileges it added nothing, though it may have aided him in the proof of them. No other conclusion would accord with the policy heretofore uniformly pursued by the Legislature and this court. Any other interpretation would make the statute in its present shape a pitfall and a nuisance to owners who may find occasion to quit their homes for brief periods without letting them to rent. We fully recognize the rule that the office of construction is to ascertain what the language of an act means, and not what the Legislature may have intended apart from the language used. But

such a construction ought to be put upon the statute as will best answer the intention the makers had in view, which was, as we think has appeared from several concurring considerations, to afford further protection to homestead exemptioners. "In some cases," to meet the evident purpose of the lawmakers, "the letter of a legislative act is restrained by an equitable construction; in others it is enlarged, as where the case comes within the identical reason upon which the lawmaker proceeded, not merely a like reason (*U. S. v. Freeman,* 3 How. 556, 11 Ed. 724); in others the construction is contrary to the letter" (*Beley v. Naphtaly,* 169 U. S. 360, 18 Sup. Ct. 354, 42 L. Ed. 775). The opinion we reach, involves no impossible or strained construction of the statute. On the contrary, we think settled canons of interpretation, some of them having special application to exemption laws, lead to the conclusion that the language employed in the original statute, and in its revision, intends that the owner who quits his homestead temporarily, without letting it to rent, does not forfeit his exemption though he fails to file a declaration of claim.

The question of intention in cases of this character is generally a question for jury decision in which the element of the lapse of time during which the owner has remained away from his homestead plays a considerable part, though it is not conclusive unless prolonged beyond all reason. On the evidence in this case it was a question of inferential fact whether appellant in quitting his homestead intended then and continuously thereafter to return, or whether, having no such intention, he at any time prior to the levy of execution abandoned, facto et animo, and so forfeited, his right of homestead in the property in suit. This question, on the case as it now appears, should have been submitted

[Pendley v. Commissioners' Court of Fayette County.]

to the jury, and the general charge for appellee was error.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD, and DE GRAFFENRIED, JJ., concur.