142 So. 829

**NATIONAL SURETY CO. v. BAKER et al.**

3 Div. 8.

Supreme Court of Alabama.

June 23, 1932.

Ball & Ball, of Montgomery, for appellant.

Foster & Foster, of Montgomery, for appellees.

GARDNER, J.

Appellant seeks to subject the real estate described in the bill to the satisfaction of its judgment against T. L. Baker, who claims the property exempt to him as a homestead. Section 7882, Code 1923.

The cause was submitted upon oral testimony before the chancellor, who sustained the claim of exemption and denied relief.

The property is situated on the Carter Hill road in the city of Montgomery. That Baker has been a resident of Montgomery and resided on these premises a long number of years and established the same as a homestead is not questioned. Nor does the matter of valuation form the basis of any controversy. The appeal presents but the sole question whether Baker had abandoned the premises as a home and lost his homestead rights.

Appellant lays much stress upon Trapp v. First National Bank, 217 Ala. 587, 117 So. 197; and Smith Lumber Co. v. Garry, 202 Ala. 473, 80 So. 857. But these authorities involved a lease of the premises, with no reservation of occupancy, and are to be differentiated from the instant case.

True, Baker in January, 1930, was engaged in building a house in Chilton county, and lived in a camphouse on Lake Jordan, taking some furniture with him, but leaving his wife and most of his furniture in the Montgomery home, and returning to his home once or twice each week. In July, 1930, his wife went with him and carried more furniture with her. They lived in the camphouse, which is described as not a permanent house, "just a shack," and most of the furniture is now there, but some still remains in the home. Baker has engaged in farming while there. In August, 1930, one Duncan moved into the Baker home and stayed six months. There was no plumbing in the house, and he proposed to Baker to install the plumbing for the rent on a basis of $20 per month, and thereafter he paid $60 in cash. The arrangement was entirely oral. Baker insists he informed Duncan the place was his home and he would not rent it all, but would let him have part of it for protection. And he is corroborated by the testimony of Duncan to the effect that he did not in fact rent the entire house but only the downstairs, reserving for himself the upstairs, which contained three bedrooms and a bath, and that Baker's unmarried son remained there, sleeping upstairs. In January, 1931, Duncan moved out, and in May, 1931, Baker testified he let one Quillan, who was operating the "tourist camp," go in the house to protect it, with the verbal understanding he would move out at any time, and could pay no agreed rent, but would take care of the place and "would pay a little money."

Baker's son continued to live upstairs, and the furniture that was left there remained upstairs also. Baker visited the place once or twice a week, and so did his wife when she came with him. Quillan stayed six months and paid a total of $15. Quillan's testimony corroborates Baker in material respects, and discloses that he too only occupied the downstairs, the upstairs being reserved for Baker where the furniture was, and where his son stayed at night, and that Baker would come to the premises once or twice a week. He further corroborates Baker in stating the agreement when he moved in was that he would move out upon demand.

The testimony is without dispute that Baker's present manner of living is a mere temporary arrangement, in a camphouse, unsubstantial, that has no ceiling, "just a hulled-in house," with partition walls.

It is further without dispute that no declaration of claim to a homestead exemption was filed as provided in section 7914, Code 1923. But such neglect, is not, under the circumstances here disclosed, a matter of controlling importance. Miles v. Miles, 211 Ala. 26, 99 So. 187. In Fuller v. American Supply Co., 185 Ala. 512, 64 So. 549, 550, it was held that the last cited statute was not intended to make the filing of such declaration an indispensable condition upon which the owner of the homestead may have the protection of his exemption during temporary absence in which he intends to return and continuously keeps it in his power to do so, and that such temporary absence has not been limited to one or two years. "A homestead, once acquired, is presumed to continue until a change, facto et animo, is shown. * * * The owner had always been considered as in the actual occupancy of his homestead when he left it, animo revertendi, and without putting it out of his power at any time to return and occupy." Fuller v. American Supply Co., supra.

In the instant case, the owner reserved a portion of the house for his own use, and his son did in fact continue to occupy it as his home. In each instance of occupancy by another, Baker, the owner, kept in his power at any time to return and occupy, and we are of the opinion the case is brought within the influence of Bland v. Putman, 132 Ala. 613, 32 So. 616; Taylor v. Gallaha, 212 Ala. 474, 103 So. 457 (both of which are here much in point), and well within the principles recognized and fully considered in Fuller v. American Supply Co., supra.

The question of abandonment was one of fact, and we think the conclusion of the chancellor that Baker left his home only temporarily, with intention to return, and without putting it out of his power at any

time to do so, was well sustained by the proof.

It results therefore that the decree is correct, and will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and KNIGHT, JJ., concur.