39 So.2d 17

**BARBER v. BECKETT et al.**

**6 Div. 710.**

Supreme Court of Alabama.

Feb. 17, 1949.

Boutwell, Pointer & Hawkins, of Birmingham, for appellees.

Barber & Barber, of Birmingham, for appellant.

STAKELY, Justice.

The vital question in this case is whether Althea Jacob abandoned her homestead and so lost her title to the property through a sheriff's sale. The suit was begun by W. C. Barber (appellant) by a bill in equity for a sale for division, the complainant claiming an undivided one-half interest in a lot of land with an area of about 7,000 square feet with a house thereon, the property being located in Jefferson County. Horace M. Beckett and Frances Evelyn Beckett (appellees) filed an answer and cross-bill denying complainant's title and seeking affirmative relief by quieting their title to the property.

Complainant then filed an answer to the cross-bill setting forth his claim to title to an undivided half interest in the property by virtue of a sheriff's deed. The testimony was given orally before the court and the court rendered a decree denying the relief sought by complainant and granting the respondents the relief sought in their cross-bill. Hence this appeal.

On January 4, 1938, Alabama Mortgage and Securities Corporation recovered judgment in the Circuit Court of Jefferson County against Althea Jacob and Oliver G. Jacob for $3,187.06 and costs with waiver of exemptions as to personalty. Certificate of the judgment was filed for record on January 5, 1938, in the office of the Judge of Probate of Jefferson County, Alabama. Thereafter Oliver G. Jacob bankrupted and was discharged from the obligation. Thereafter on October 29, 1941, Oliver G. Jacob and Althea Jacob acquired the aforesaid lot by deed from Stackhouse, Incorporated for a consideration of $150.64 in cash, the assumption of a first mortgage thereon to Jackson Securities & Investment Company and the execution of a second mortgage to Stackhouse, Incorporated for $310.75, making a total consideration of $3,650.64. This total amount was the reasonable market value of the property at the time. Located on the lot was a four room house. Her interest in this property was all the real estate owned by Althea Jacob. She and her husband took possession of the property and occupied it as their home until October 1, 1943.

Oliver G. Jacob was employed by Miller G. Williams Machinery Company of Montgomery with branch office in Birmingham. On October 1, 1943, he was transferred temporarily by his employer 'to its Montgomery office. Oliver G. Jacob and Althea Jacob thereupon rented their house to Charles Palzolo and wife upon terms which will be referred to later. On October 2, 1944, Althea Jacob and Oliver G. Jacob sold and conveyed the property to E. D. Farmer for a consideration recited in the deed of $100 and other good and valuable considerations, including the assumption of the mortgage to Jackson Securities & Investment Company. The mortgage from the Jacobs to Stackhouse, Incorporated had been paid and was satisfied July 10, 1944. On July 27, 1946, E. D. Farmer and his wife sold and conveyed the property to Horace M. Beckett and Frances Evelyn Beckett (appellees). At that time there was a first mortgage in favor of Prudential Insurance Company for $2,560.40 and a second mortgage in favor of Jackson Securities Investment Company for $302.-90. These mortgages were satisfied at the time of the sale and a new mortgage was made to the Jackson Securities & Investment Company for $4,700 which is still unpaid.

Execution was issued on the judgment hereinabove referred to on November 19, 1946. The sheriff of Jefferson County levied on the property and on January 20, 1947, sold and conveyed the interest and title of Althea Jacob therein by sheriff's deed to W. C. Barber, his bid at the sheriff's sale being in the amount of $5.

Omitting consideration for the moment of the renting of the property to Charles Palzolo, the situation may be analyzed in this manner. When the certificate of judgment in favor of Alabama Mortgage & Securities Corporation was recorded on January 5, 1938, the judgment became a lien upon all the property in Jefferson County, subject to levy and sale under execution, which Althea Jacob then owned or thereafter acquired within ten years from the date of the judgment. Section 585, Title 7, Code of 1940; W. T.

Rawleigh Co. v. Patterson, 239 Ala. 309, 195 So. 729. The recordation of such a certificate has the effect of an execution in the hands of the sheriff as an "instrumentality of creating and preserving a lien." And when a levy and sale are made under execution on the judgment, the title under the sheriff's deed relates back to the inception of the lien and so takes precedence over all transfers and incumbrances made subsequently to such inception. Crawford Mercantile Co. v. Anderton, 179 Ala. 573, 60 So. 874; W. T. Rawleigh Co. v. Patterson, supra. But, as stated, to have the foregoing result the property must be subject to levy and sale under execution and in this connection the law looks with favor on the establishment of a homestead. So when lands are purchased for a home, although a recorded judgment stands against the purchaser, the purchaser may proceed to occupy the land and make a home thereon, and when this is done in accordance with homestead requirements, the judgment lien does not attach. W. T. Rawleigh Co. v. Patterson, supra.

■■■ In the case at bar there is no doubt that Althea Jacob occupied the property as a home. As a married woman she could have a homestead exemption in her separate estate. Barton et al. v. Laundry, 202 Ala. 10, 79 So. 308. It was all the real estate she owned. Its area was within the statute's requirements and so was its value, because if the homestead is encumbered by a mortgage, the amount of the incumbrance is deducted from the entire value to determine whether the debtor's interest does not exceed $2,000. Brock Candy Co. v. Elson, 211 Ala. 244, 100 So. 94. There is no doubt that while Althea Jacob occupied the property, she had a homestead therein, free from the lien of the judgment. It is furthermore true that if at the time Althea Jacob conveyed the property to E. D. Farmer she still had a homestead in the property, she could dispose of the homestead as though there was no judgment and E. D. Farmer would receive a good title, since a judgment creditor had no claim upon it and could suffer no injury by its disposition. Terry et al. v. Schaeffer, 239 Ala. 264, 194 So. 502; Brock Candy Co. v. Elson, supra.

We have now reached the decisive question in the case. What was the extent of the interest of Althea Jacob in and to the property conveyed by the sheriff's deed to appellant? The lien of the recorded judgment attached when she took title on October 29, 1941, subject to her homestead rights and the prior subsisting liens of the two mortgages. It is earnestly insisted by appellant that the homestead right was forfeited by abandonment and since the two mortgages were satisfied, it is claimed that appellant acquired title to the interest of Althea Jacob by sale thereof under the judgment, since according to appellant, the judgment lien became paramount. We do not need to consider cancellation of the mortgages, if Althea Jacob did not abandon her homestead and this is what the court found with the witnesses testifying orally before it.

■■■ No declaration of a claim to a homestead was filed by Althea Jacob as provided by § 657, Title 7, Code of 1940, which is as follows: "When a declaration of claim to a homestead exemption has been filed in the office of the judge of probate, leaving the homestead temporarily, or a leasing of the same, shall not operate an abandonment thereof, or render it subject to levy and sale; but the right thereto shall remain the same as if the actual occupancy thereof had continued."

Prior to this statute a leasing for a term was considered an abandonment of a homestead because by leasing the property for a term, the owner gave up the right to reoccupy the property at his pleasure. Smith Lumber Co. v. Garry, 202 Ala. 473, 80 So. 857. Under the foregoing statute there is no abandonment even where the leasing is for a definite term provided the declaration is filed. In other words the statute was not intended to limit but to enlarge the rights of the owner by setting up a method whereby the owner could lease the homestead for a definite period without losing his exemption. Fuller v. American Supply Co., 185 Ala. 512, 64 So. 549, 551; Smith Lumber Co. v. Garry, supra. "The owner had always been considered as in the actual occupancy of his homestead when he left it, animo rever-

tendi, and without putting it out of his power at any time to return and occupy." Fuller v. American Supply Co., supra. So if Althea Jacob, at the time she and her husband moved to Montgomery, considered her absence as temporary, intended to continue to claim this property as her homestead, expected to return and occupy it and did not place it beyond her control to regain possession at any time she so desired by renting it for a definite term, then there was no abandonment of her homestead.

Althea Jacob and her husband occupied the premises as a homestead continuously from the time of purchase until October 1, 1943, when he was sent temporarily to Montgomery to work on war contracts. They then rented the house to Mr. and Mrs. Palzolo temporarily at the rate of $40 per month. The testimony does not disclose a rental by the month and when construed in connection with the other testimony indicates that the $40 was merely the rate by which the rental was to be determined. The occupancy of Mr. and Mrs. Palzolo continued to January 4, 1945. We set out the testimony relative to the leasing to Mr. and Mrs. Palzolo:

The witness Oliver G. Jacob testified:

"Q. Did you have any agreement with reference to renting the property? A. As long as we stayed away. * * *."

The witness Althea Jacob testified:

"Q. What was the occasion for your moving? A. Well, Mr. Jacob didn't know when we were going to stay and we moved for awhile.

"Q. Did you have an understanding to get the property back? A. If we came back, Mrs. Palzolo was to release it.

"Q. Before you moved to Montgomery was he transferred there permanently or temporarily by his concern? A. Temporarily because he didn't know how long he was going to stay there. * * *."

Mrs. Charles Palzolo, a witness for appellant testified:

"Q. You say there was no written lease. Was anything said at that time, whether you would rent five years or ten years or—anything said about the time that—about the length of time you would rent the house for? A. No, sir. I don't remember that.

"Q. Nothing was said according to your best recollection about how long you were renting the house? A. No, sir. Mrs. Jacob said she appreciated her home. She didn't want much to leave it but he was sent down there. She expected to redeem this as her home and come back here sometime but as far as when she was coming back, I didn't know and I don't think she did either.

"Q. Nothing was said? A. No, sir.

"Q. Now, I believe you said Mrs. Jacob was reluctant to rent the place because she thought of it as her home but she had to leave? A. Yes.

"Q. And she was expecting to return to her home but of course, didn't know when? A. Yes, sir.

"Q. She wanted to keep it as her home and homestead during that time? A. Yes, sir. * * *."

We conclude that under the foregoing testimony the court clearly had the right to find that the leasing was for an indefinite period and that Althea Jacob did not abandon her homestead. Certainly with the witnesses testifying orally before the court we will not say that the decree of the lower court was palpably wrong. Randolph v. Randolph, 245 Ala. 689, 18 So.2d 555. It results that the decree of the lower court must be affirmed.

Affirmed.

BROWN, FOSTER and LAWSON, JJ., concur.