431 So.2d 1160 (1983)
Hollis HOGAN, et al.
v.
Johnny L. CARTER.
81-606.
Supreme Court of Alabama.
March 11, 1983.
Rehearing Denied May 6, 1983.
*1161 John Plunk of Steele, Alexander, Corder & Plunk, Athens, for appellants.
Jere Trent and David U. Patton, Athens, for appellee.
TORBERT, Chief Justice.
Johnny L. Carter (appellee) purchased certain property which was sold by the sheriff in an execution sale to satisfy a judgment enforcing a materialmen's lien. Approximately one year later, when other judgment creditors and materialmen's lienholders sought to execute on the same property, appellee Carter filed this action against the sheriff and the other judgment creditors (appellants) to enjoin the execution sale sought by appellants. The trial court granted the injunction requested by Carter. Hogan and the creditors appealed this action; we reverse and remand.

FACTS
In December 1977 Hubert and Frances McLemore acquired the disputed property with the intention of building a restaurant. They purchased building materials from Collins Supply, Inc. (Collins), Anderson Supply Company, Inc. (Anderson), and Julian Coffman d/b/a C & R Sheet Metal (C & R). On January 23, 1978, about six weeks after acquiring the property, the McLemores executed a mortgage for $21,500 to the First Alabama Bank of Athens (which is not a party to the instant case). On February 28, 1978, Collins filed a verified statement of materialmen's lien and an action against the McLemores to recover some $11,000 claimed to be owed for materials furnished, and "to have the mortgage of First Alabama Bank of Athens subrogated to plaintiff's lien." On September 25, 1978, Collins took by default a judgment for $12,090, *1162 which was later amended as to the amount, and which also declared and established in favor of Collins a lien for materials furnished and work and labor done on the subject property. Subsequently, on February 28, 1979, a final judgment was entered declaring the lien of Collins to have priority over the mortgage of First Alabama Bank. Rather than proceeding to cause the property to be condemned and sold in satisfaction and discharge of the established lien of Collins, an execution was issued on March 22, 1979, to the sheriff, which resulted in a sheriff's sale on April 24, 1979, at which Carter purchased the property for $11,000. The proceeds of the sheriff's sale on the execution of Collins's judgment were paid out to satisfy the judgment of Collins, with an excess of $259.12. Limestone Drug Company, Inc., another judgment creditor, filed a garnishment against the circuit clerk and with the written consent of the McLemores, the excess of the sale proceeds was paid to Limestone Drug Company, Inc. Both Collins and Limestone Drug were represented by the same attorney.
Appellants, other than Sheriff Hogan, as creditors of the McLemores, filed verified statements of materialmen's liens and actions to reduce their respective claims to judgment and to enforce their materialmen's liens. Anderson received a judgment against the McLemores on June 26, 1978, for $3,641.84; C & R received its judgment against the McLemores on September 5, 1978, for $3,000.00; Carmen Southard received a judgment against Frances McLemore on September 18, 1978, for $500.00; Arnold Institutional Foods, a corporation, received on October 3, 1978, a default judgment against Frances McLemore for $2,807.55; and Garth Insurance Company, Inc., apparently received a judgment based upon a lien arising out of a writ of attachment, but the trial court found it to be subordinate to the other materialmen's liens against the McLemores.
On April 15, 1980, appellants C & R, Anderson, and Southard commenced execution proceedings to cause the subject property to be sold in satisfaction of their judgments and materialmen's liens.
The suit of appellee Carter seeking to enjoin the sale was heard and submitted upon written stipulations of fact, oral testimony, and arguments of counsel. The trial court found that the first execution sale was not rendered void by any defects in the sale, and found that appellee Carter took the property in question free and clear of all other liens other than the mortgage to the First Alabama Bank of Athens. As to the question of whether the holders of the other materialmen's liens (appellants) have equal standing to enforce their liens on the property, the trial court found that there had been no consolidation as to all of the lien claimants in the Collins suit. Therefore, the failure to consolidate the cases defeated the claim of the other lienholders under Code 1975, § 35-11-228.
Finally, the trial court granted the relief prayed for by appellee Carter, thus granting an injunction against appellants as to the proceedings to cause a subsequent execution sale by the sheriff.
Evidence was adduced in the trial of this case, which was not controverted, that the fair market value of the property at the time of the first execution sale was between $40,000 and $50,000. In December 1978, the McLemores attempted to sell their property by auction. The highest bid was $45,000, but no sale was made because this amount was insufficient to clear the outstanding liens against the property.

THE DECISION
Appellants ask this Court to overturn the injunction Carter obtained against the second sale. By way of cross-claim, appellants claimed that the first execution sale was invalid due to the irregularities in the conduct of the sale, and asked that the subject property be sold again by the sheriff at execution sale so that they can share in the proceeds of the sale.
The statutory requirements for a sale of levied on property were not followed in several respects. Notice of Collins's sale was posted for less than 30 days, in violation of Code 1975, § 6-9-87. The sale was *1163 held on a Tuesday, contrary to Code 1975, § 6-9-86, which provides: "Lands, when levied on under execution from any court of record, must be sold on any Monday." The sale had been set for Monday, April 23, 1979, but that Monday was a legal holiday. Therefore, the sheriff announced to those who appeared on Monday that the sale would be continued to the following day. The appellants argue that Code 1975, § 6-9-86, makes no provision for continuance on the ground that the scheduled sale day was a holiday. This section states: "The sale may be continued from day to day if rendered necessary by the inclemency of the weather or from inability to conclude the sale in one day." The appellants contend that the sheriff should have published a postponement notice under Code 1975, § 6-8-69.
Appellants maintain that these irregularities, in combination with the insufficient purchase price (Carter paid about onefourth of the market value of the property), require that the sale be declared invalid. Courts have the power to set aside "a sale made under any legal process [when] infected with fraud, oppression, irregularity or error to the injury of either party," Code 1975, § 6-9-147, or when the sales price is "so grossly inadequate as to shock the conscience of a fair and honest man." Dunn v. Ponceler, 235 Ala. 269, 274, 178 So. 40, 44 (1937).
This Court has held that procedural irregularities alone are not enough to invalidate the sale. Dean v. Lusk, 241 Ala. 519, 3 So.2d 310 (1941); Bonner v. Lockhart, 236 Ala. 171, 181 So. 767 (1938). Nor is inadequacy of price enough unless it is so extreme, or so related to procedural irregularities, as to create a presumption of fraud. Madison v. Ware, 277 Ala. 408, 171 So.2d 117 (1965); Martin v. Jones, 268 Ala. 286, 105 So.2d 860 (1958). In addition, the terms of our statute appear to allow the setting aside of sales for reasons not limited to fraud, and in practice most courts seem to take a common-sense approach to all the circumstances, including the price, the likely effect of procedural irregularities, inequitable conduct, evidence of mistake or misapprehension, and problems with title. See generally Annot., 5 A.L.R. 4th 794 (1981). Under Code 1975, § 6-9-147, such factors may appropriately be considered. The ultimate determination is largely within the discretion of the trial court. Cox v. Cox, 267 Ala. 372, 102 So.2d 23 (1958).
However, while each of the general rules, taken individually, is correct, the various irregularities involved in this sale, taken together with the inadequacy of the sales price, compel this Court to order that this sale on execution be set aside.
This approach has gained judicial acceptance. "[V]irtually all courts recognize that inadequacy of price, in some degree, combined with some form of other circumstances, especially those indicative of fraud or unfairness on the part of the purchaser, or mistake, does justify the setting aside of an execution sale." (Emphasis added.) Annot., 5 A.L.R. 4th 794, 802 (1981). Mason v. Wilson, 116 Ariz. 255, 568 P.2d 1153 (Ariz. App.1977), exemplifies this approach:
"A court may order an execution sale set aside on the basis of two grounds: First, the purchase price received at the sheriff's sale may be so inadequate as to shock the conscience of the court and justify setting aside the sale, Nussbaumer [v. Superior Court In and For County of Yuma, 107 Ariz. 504, 489 P.2d 843 (1971)], supra; Wiesel v. Ashcraft, 26 Ariz.App. 490, 549 P.2d 585 (1976). Second, where there is an inadequacy of price which in itself might not be grounds for setting aside the sale, slight additional circumstances or matters of equity may so justify."
568 P.2d at 1155.
While the price received in the case before us may not be so inadequate as to shock the conscience, the accompanying procedural irregularities constitute additional circumstances which, together with the inadequate sales price, justify setting aside the sale. This Court has stated:
"When the property is purchased by a stranger, the sale will not be set aside for mere inadequacy of price, no matter how *1164 gross, unless there is some unfair practice at the sale or unless there is mistake or surprise, without fault on the part of those interested."
Martin v. Jones, 268 Ala. 286, 288, 105 So.2d 860, 863 (1958). In the case before us, the sales price of $11,000 was clearly inadequate, particularly in light of the December 1978 bid of $45,000. This inadequacy, taken in conjunction with the failure to give notice for 30 days prior to the sale, failure to hold the sale on Monday as required by law, and failure to publish notice of postponement, constitutes the type of "unfair practice at the sale" which mandates that the sale be set aside in this case.
Appellee urges this Court to hold that appellants should be barred by laches from now contesting the validity of the sale, or claiming any portion of the proceeds. We disagree.
The question of laches must be considered in light of Code 1975, § 6-9-211, which provides that a recorded judgment shall be a lien on the property of defendant in the county for ten years. Thus the delay here[1] was well within the time period contemplated by the legislature for enforcement of liens. Delay permitted by the statute of limitations does not constitute laches, in the absence of special facts making the delay culpable. Sims v. Lewis, 374 So.2d 298 (Ala.1979); Lipscomb v. Tucker, 294 Ala. 246, 314 So.2d 840 (1975). No such special facts are shown here. Carter purchased subject to the interests of the other materialmen's lienholders, who were not bound by Collins's action. Code 1975, §§ 6-9-142, 35-11-223(a). Under these circumstances, Carter has not established the basic element of lachesprejudice resulting from the other parties' delay. Murphree v. Henson, 289 Ala. 340, 267 So.2d 414 (1972).
Appellants also present the issue of relative priority of the various claims to the property. Since we hold that the execution sale to Carter is invalid, the trial court, on remand, will have the opportunity of establishing the various priorities among the judgment creditors involved in this proceeding. To aid the trial court in this determination, we call attention to the provisions of Code 1975, § 35-11-228, which provides "All liens arising under this division, except in favor of the original contractor, shall stand on an equal footing...." In its brief, Collins contends that it was an original contractor and as such, would have been entitled to priority over appellants Anderson and C & R. From the record, it does not appear that the trial court made a finding on this issue, since the trial court held the sale valid. There appears to be in the record some evidence that appellants Anderson and C & R each filed a verified statement of materialmen's lien as an original contractor. If the trial court determines this as a factual matter, and assuming that the notice of lien and the suit were timely filed and properly perfected, then those judgment creditors who established valid materialmen's liens as original contractors would stand on an equal footing, and under Code 1975, § 35-11-211, would have priority "over all other liens, mortgages or incumbrances created subsequent to the commencement of work on the building or improvement."
We reverse and remand for further proceedings in accordance with this opinion.
REVERSED AND REMANDED.
MADDOX, FAULKNER, ALMON and SHORES, JJ., concur.
JONES, EMBRY, BEATTY and ADAMS, JJ., concur in part and dissent in part.
BEATTY, Justice (concurring in part and dissenting in part):
The majority opinion errs on two issues: The validity of the sale and the relative priority of the claims to the property. In my view the record is sufficient for us to decide the priorities issue. Proper resolution *1165 of that issue in turn makes it clear that it cannot possibly be considered an abuse of discretion for the trial court to have upheld the sale.
With respect to the priorities issues, Code of 1975, § 6-9-142, captioned in part "Caveat emptor," provides that "[t]he purchaser must look for himself as to the title and soundness of all property sold under judicial process."[1] Thus, it is often said that a purchaser at an execution sale is in the position of a grantee under a quitclaim deed. Figh v. Taber, 203 Ala. 253, 82 So. 495 (1919); Barksdale v. Beasley, 260 Ala. 148, 69 So.2d 280 (1954).
Carter thus purchased subject to other claimsbut not to all the encumbrances on the property. Instead, Carter is subrogated to the rights of the execution creditor, Collins.[2] As stated in Barber v. Beckett, 251 Ala. 569, 39 So.2d 17, 19 (1949), "when a levy and sale are made under execution on the judgment, the title under the sheriff's deed relates back to the inception of the lien and so takes precedence over all transfers and incumbrances made subsequently to such inception."
The inception of Carter's title has already been determined in Collins's action to be prior to the mortgage, which in turn has priority, by virtue of its earlier recordation, over the liens of the general judgment creditors. Moreover, each of the materialmen's lien holders, Carter, Anderson and C & R, have priority "over all other liens, mortgages or incumbrances created subsequent to the commencement of work on the building or improvement." Code of 1975, § 35-11-211. In relation to each other the materialmen's lien holders are "on an equal footing," Code of 1975, § 35-11-228,[3] and accordingly, each is entitled to share in what is realized from the sale of the property.
It follows that the trial court erred in granting an injunction against the execution sale of Anderson and C & R. Carter's title is subject to their right to execution. They could have been joined in Collins's original action; in the absence of joinder they are not bound by its results. Code of 1975, § 35-22-223(a); Starek v. TKW, Inc., Ala., 410 So.2d 35 (1982). Therefore, the original sale should stand, and we should remand simply for the purpose of allowing Anderson and C & R to proceed with their execution sale.
Carter argues that, because only Collins's lien was adjudicated superior to the mortgage, the other materialmen's liens must be inferior to the mortgage and to Carter's title, derived from Collins. This conclusion is unfounded. As against each other the three materialmen's lien holders are "on an equal footing." The priority of Anderson and C & R against the bank has not been decided and would only be considered on remand if the bank becomes a party or purchases the property.
*1166 With respect to the issue of the sale's validity, the majority effectively sabotages the trial court's traditional discretion in determining whether to set aside execution sales under Code of Ala.1975, § 6-9-147.[4] In order to do so, the majority relies on the principleone which I acceptthat inadequacy of price combined with slight additional circumstances may justify setting aside a sale. The question here, however, is whether this principle requires setting aside the sale. Our role is solely to determine whether the trial court abused its discretion. Cox v. Cox, 267 Ala. 372, 102 So.2d 23 (1958); Sieben v. Torrey, 252 Ala. 675, 42 So.2d 621 (1949). We can find an abuse of discretion only if the principle relied upon by the majority, when applied to the particular facts presented here, leaves no room for doubt that the sale must be set aside.
Viewed from this perspective, the trial court's approval of the sale should be upheld. The majority has cited no case reversing a trial court for not setting aside the sale. Two factors in the present case make clear that the trial court did not abuse its discretion. First, the purchaser here was not the only bidder at the sale and was a stranger to the original transaction rather than a creditor. Compare Cox v. Cox and Seiben v. Torrey, supra, where these factors were specifically noted.
The second factor is that proper resolution of the priorities issue reveals the inadequacy of price to be relatively small. The injustice normally sought to be remedied by setting aside an execution salea windfall to the purchaser at the expense of the debtor's equity in the propertyis largely absent here. This is apparent from the fact that most of the outstanding claims to the property (and the McLemores' interest in having those claims disposed of) should remain unimpaired by the sale to Carter. Anderson and C & R are free to execute on their liens and the bank's mortgage is still effective. The claims of the bank and the three materialmen's lien holders total almost $39,000. Thus, the only windfall Carter received was the additional property value of $6,000, which would otherwise have been available to pay most of the remaining creditors. It is true that such loss may constitute "injury" within the meaning of Code of Ala. 1975, § 6-9-147, sufficient to set aside the sale. Doing so would be within the trial court's discretion. However, the majority has effectively compelled the trial court to exercise its discretion in favor of securing the claims of every possible creditor. Such an approach may tend to undermine the stability of execution or judicial sales, thus "discouraging bidders and diminishing the amounts realized," Campbell v. Carter, 248 Ala. 294, 296, 27 So.2d 490 (1946) (subsequent advance offer held insufficient to set aside sale). In my view the trial court should have some discretion to weigh the degree of procedural error and inadequacy of price against the need for stability in these proceedings.
JONES, EMBRY and ADAMS, JJ., join in the above.
NOTES
[1] About 22 months elapsed between the recording of Anderson's judgment and its execution; this period was about 18 months for C & R.
[1] "The statutory language is somewhat ambiguous, stating first that the buyer receives the same rights as if the sale were made by the debtor himself [§ 6-9-140] and then ... providing that the rule of caveat emptor applies [§ 6-9-142]." R. Dugan, Creditors' Post-Judgment Remedies: Part I, 25 Ala.L.Rev. 175, 199-200 (1972). Since the other creditors have recorded their claims, that ambiguity, which would arise if there was an unrecorded claim to the property, need not be resolved here.
[2] This is so only to the extent that the purchase price paid by Carter went to satisfy the Collins judgment. To the extent of the amount ($259.12) that went to satisfy the judgment of Limestone Drug, Carter has priority only over subsequent judgment creditors.
[3] This statute reads in part: "All liens arising under this division, except in favor of the original contractor, shall stand on equal footing, and be first paid out of the proceeds of the sale of the property, or money collected from the owner or proprietor; and if such proceeds and money are insufficient to satisfy such liens in full, the same shall be distributed pro rata among the holders thereof...." In its brief Collins contends that it was an original contractor and so entitled to priority over Anderson and C & R. From the record this contention does not appear to have been made at the trial level and the decree made no finding on the issue. Therefore we should not consider this contention. In any case an original contractor is one whose relationship is with the owner instead of with another contractor in a subcontracting arrangement. Anderson and C & R apparently contracted with the McLemores so they too would be original contractors. See Morris v. Bessemer Lumber Co., 217 Ala. 441, 116 So. 528 (1928).
[4] Code of 1975, § 6-9-147: "Courts have full power over their officers making execution or judicial sales, and whenever satisfied that a sale made under any legal process is infected with fraud, oppression, irregularity or error to the injury of either party, the sale will be set aside."