The majority opinion errs on two issues: The validity of the sale and the relative priority of the claims to the property. In my view the record is sufficient for us to decide the priorities issue. Proper resolution *Page 1165 
of that issue in turn makes it clear that it cannot possibly be considered an abuse of discretion for the trial court to have upheld the sale.
With respect to the priorities issues, Code of 1975, §6-9-142, captioned in part "Caveat emptor," provides that "[t]he purchaser must look for himself as to the title and soundness of all property sold under judicial process."[1] Thus, it is often said that a purchaser at an execution sale is in the position of a grantee under a quitclaim deed. Figh v.Taber, 203 Ala. 253, 82 So. 495 (1919); Barksdale v. Beasley,260 Ala. 148, 69 So.2d 280 (1954).
Carter thus purchased subject to other claims — but not to all the encumbrances on the property. Instead, Carter is subrogated to the rights of the execution creditor, Collins.[2]
As stated in Barber v. Beckett, 251 Ala. 569, 39 So.2d 17, 19
(1949), "when a levy and sale are made under execution on the judgment, the title under the sheriff's deed relates back to the inception of the lien and so takes precedence over all transfers and incumbrances made subsequently to such inception."
The inception of Carter's title has already been determined in Collins's action to be prior to the mortgage, which in turn has priority, by virtue of its earlier recordation, over the liens of the general judgment creditors. Moreover, each of the materialmen's lien holders, Carter, Anderson and C R, have priority "over all other liens, mortgages or incumbrances created subsequent to the commencement of work on the building or improvement." Code of 1975, § 35-11-211. In relation to each other the materialmen's lien holders are "on an equal footing," Code of 1975, § 35-11-228,[3] and accordingly, each is entitled to share in what is realized from the sale of the property.
It follows that the trial court erred in granting an injunction against the execution sale of Anderson and C R. Carter's title is subject to their right to execution. They could have been joined in Collins's original action; in the absence of joinder they are not bound by its results. Code of 1975, § 35-22-223 (a); Starek v. TKW, Inc., Ala., 410 So.2d 35
(1982). Therefore, the original sale should stand, and we should remand simply for the purpose of allowing Anderson and C R to proceed with their execution sale.
Carter argues that, because only Collins's lien was adjudicated superior to the mortgage, the other materialmen's liens must be inferior to the mortgage and to Carter's title, derived from Collins. This conclusion is unfounded. As against each other the three materialmen's lien holders are "on an equal footing." The priority of Anderson and C R against the bank has not been decided and would only be considered on remand if the bank becomes a party or purchases the property. *Page 1166 
With respect to the issue of the sale's validity, the majority effectively sabotages the trial court's traditional discretion in determining whether to set aside execution sales under Code of Ala. 1975, § 6-9-147.[4] In order to do so, the majority relies on the principle — one which I accept — that inadequacy of price combined with slight additional circumstances may justify setting aside a sale. The question here, however, is whether this principle requires setting aside the sale. Our role is solely to determine whether the trial court abused its discretion. Cox v. Cox, 267 Ala. 372,102 So.2d 23 (1958); Sieben v. Torrey, 252 Ala. 675, 42 So.2d 621
(1949). We can find an abuse of discretion only if the principle relied upon by the majority, when applied to the particular facts presented here, leaves no room for doubt that the sale must be set aside.
Viewed from this perspective, the trial court's approval of the sale should be upheld. The majority has cited no case reversing a trial court for not setting aside the sale. Two factors in the present case make clear that the trial court did not abuse its discretion. First, the purchaser here was not the only bidder at the sale and was a stranger to the original transaction rather than a creditor. Compare Cox v. Cox andSeiben v. Torrey, supra, where these factors were specifically noted.
The second factor is that proper resolution of the priorities issue reveals the inadequacy of price to be relatively small. The injustice normally sought to be remedied by setting aside an execution sale — a windfall to the purchaser at the expense of the debtor's equity in the property — is largely absent here. This is apparent from the fact that most of the outstanding claims to the property (and the McLemores' interest in having those claims disposed of) should remain unimpaired by the sale to Carter. Anderson and C R are free to execute on their liens and the bank's mortgage is still effective. The claims of the bank and the three materialmen's lien holders total almost $39,000. Thus, the only windfall Carter received was the additional property value of $6,000, which would otherwise have been available to pay most of the remaining creditors. It is true that such loss may constitute "injury" within the meaning of Code of Ala. 1975, § 6-9-147, sufficient to set aside the sale. Doing so would be within the trial court's discretion. However, the majority has effectively compelled the trial court to exercise its discretion in favor of securing the claims of every possible creditor. Such an approach may tend to undermine the stability of execution or judicial sales, thus "discouraging bidders and diminishing the amounts realized," Campbell v. Carter, 248 Ala. 294, 296,27 So.2d 490 (1946) (subsequent advance offer held insufficient to set aside sale). In my view the trial court should have some discretion to weigh the degree of procedural error and inadequacy of price against the need for stability in these proceedings.
JONES, EMBRY and ADAMS, JJ., join in the above.
[1] "The statutory language is somewhat ambiguous, stating first that the buyer receives the same rights as if the sale were made by the debtor himself [§ 6-9-140] and then . . . providing that the rule of caveat emptor applies [§ 6-9-142]." R. Dugan,Creditors' Post-Judgment Remedies: Part I, 25 Ala.L.Rev. 175, 199-200 (1972). Since the other creditors have recorded their claims, that ambiguity, which would arise if there was an unrecorded claim to the property, need not be resolved here.
[2] This is so only to the extent that the purchase price paid by Carter went to satisfy the Collins judgment. To the extent of the amount ($259.12) that went to satisfy the judgment of Limestone Drug, Carter has priority only over subsequent judgment creditors.
[3] This statute reads in part: "All liens arising under this division, except in favor of the original contractor, shall stand on equal footing, and be first paid out of the proceeds of the sale of the property, or money collected from the owner or proprietor; and if such proceeds and money are insufficient to satisfy such liens in full, the same shall be distributed pro rata among the holders thereof. . . ." In its brief Collins contends that it was an original contractor and so entitled to priority over Anderson and C R. From the record this contention does not appear to have been made at the trial level and the decree made no finding on the issue. Therefore we should not consider this contention. In any case an original contractor is one whose relationship is with the owner instead of with another contractor in a subcontracting arrangement. Anderson and C R apparently contracted with the McLemores so they too would be original contractors. See Morris v. BessemerLumber Co., 217 Ala. 441, 116 So. 528 (1928).
[4] Code of 1975, § 6-9-147: "Courts have full power over their officers making execution or judicial sales, and whenever satisfied that a sale made under any legal process is infected with fraud, oppression, irregularity or error to the injury of either party, the sale will be set aside."